IN THE UNITED STATES DISTRICT
COURT NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | |
|---|---|
| Emilio Ybarra,<br><br>    Plaintiff,<br><br>        v.<br><br>Starbucks Corporation,<br><br>    Defendant. | Case No. 18-cv-8169<br><br>COMPLAINT FOR VIOLATIONS OF TITLE VII & SUPPLEMENTAL STATE LAW CLAIM |

## COMPLAINT

Now comes Plaintiff Emilio Ybarra ("Ybarra"), by and through counsel, and against Defendant Starbucks Corporation ("Starbucks"), complains as follows:

### Jurisdiction, Venue, and Parties

1. This case arises under Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C. §2000e, *et seq.* ("Title VII"). Accordingly, this Court has jurisdiction to hear this case pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

2. Ybarra also brings state law claims under the Illinois Human Rights Act, codified at 775 ILCS/5-101, *et seq.* ("IHRA").

3. This Court has supplemental jurisdiction over Ybarra's state law claim pursuant to 28 U.S.C. §1367 because the state law claim is so related to the Title VII claim that they form part of the same case or controversy under Article III of the U.S. Constitution.

4. Ybarra was employed as a Shift Supervisor by Starbucks, with its principal office

1

located in Seattle, Washington.

5. Starbucks is a global supplier of coffee with a large chain of coffee houses in the United States, and internationally, including hundreds of locations in this District.

6. Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1-2) because Starbucks does business within this District; further, the acts and omissions that Ybarra complains of occurred within this District, at the Starbucks located at 2750 US Route 34, Oswego, Illinois, 60543 ("Oswego store").

## Facts

7. Ybarra is a man.

8. Ybarra's sexual orientation is homosexual.

9. On or around September 9, 2013, Ybarra was hired by Starbucks and placed at Starbuck's Oswego store.

10. Most recently, Ybarra worked as a Shift Supervisor at the Oswego Store.

11. On or around November 6, 2017, Robert Gonzales ("Gonzales") was transferred to the Oswego store, and began working as the Store Manager.

12. Gonzales was Ybarra's supervisor.

13. Between mid-November 2017 and mid-January, 2018, Gonzales continuously sexually harassed Ybarra:

> a) Gonzales asked Ybarra if he had a boyfriend and later that day said to Ybarra, "I am very comfortable with my sexuality, but he is a good-looking dude. So, you're into those white boys, huh? We should have a threesome, I wouldn't want it to be awkward though so I would sit out and watch."
>
> b) Gonzales asked Ybarra when was the last time he had sex. Another employee said to Ybarra, "Yeah, Emilio you need to go have sex! You're too grouchy; you

2

need to relax." Then, Gonzales asked Ybarra if he was "on the top or bottom bunk."

c) Gonzales told Ybarra he would use the company credit card to pay someone to have sex with Ybarra.

d) Gonzales winked and blew a kiss at Ybarra while they worked on opposite ends of the store.

e) Gonzales and Ybarra almost bumped into one another in the workplace. Gonzales commented, "We almost touched bodies. That would have been awkward, but a magical experience."

f) Gonzales told Ybarra, "I'm Hispanic and black, but definitely black from the waist down, if you know what I mean."

g) When Ybarra texted Gonzales that he had someone taking his shift the next day, Gonzales said "So I won't see your beautiful face all day [tear emoji]."

h) Ybarra had to use a step ladder, and Gonzales placed his hand on Ybarra's lower back and asked if he needed to spot him.

i) Gonzales commented through the employee headsets that "Emilio is sleeping on the couch tonight because he's been a bad boy and he isn't getting any."

j) Ybarra came to work with a rental car and Gonzales commented, "Damn, those cars have a ton of space in the back! Enough space for…you know…," and proceeded to thrust his hips, to simulate a sexual movement.

k) Gonzales texted Ybarra that he was not feeling well and asked if Ybarra could work the following day and Ybarra agreed. Gonzales thanked him, and replied, "[heart shaped emoji] u."

l) Gonzales overheard Ybarra talking to other about New Years plans, and a few minutes later Gonzales approached Ybarra privately and asked if he was "going to

3

be a skanky party boy" anywhere.

m) Ybarra changed in the bathroom and when he came out, Gonzales said, "Aww, you look cute! Should I give you a kiss for good luck?" He also said, "You should wear an undershirt, I can see your nipples."

n) Gonzales asked Ybarra if he was "talking to any new guys," and asked if he was "available." Then, he said Ybarra was "looking really pretty lately," and asked him if he had been working out because his "ass [was] looking tighter."

14. Ybarra's working conditions were so intolerable that on January 12, 2018, he had to quit to avoid further harassment.

15. As a result of Starbucks's actions and inactions, Ybarra has had to hire an attorney to represent him in vindicating the violation of his rights.

### Count I: Title VII Sex Discrimination

16. Ybarra re-alleges paragraphs one through fifteen (15) as if fully alleged here.

17. Title VII prohibits discrimination on the basis of sex; this statutory language has been interpreted to include sexual harassment, including harassment on the basis of sexual orientation.

18. Ybarra was subject to unwelcome harassment by his supervisor.

19. The harassment was based on his sex.

20. The harassment was based on his sexual orientation.

21. The harassment was severe and pervasive.

22. Ybarra did not consent to any of Gonzales's conduct and found such conduct to be offensive, unwelcome, and unwarranted.

23. Gonzales's sexual conduct created a hostile work environment for Ybarra.

24. Ybarra's work environment was one that a reasonable person would find hostile or abusive.

25. Ybarra did in fact find his environment to be hostile and abusive.

26. The environment of the Oswego store was so hostile and abusive that it unreasonably interfered with Ybarra's ability to work there, so much so that he had to resign from his position.

27. Starbucks's actions and inactions constitute violations of Title VII.

28. Under Title VII, Ybarra is entitled to compensation for lost wages and benefits, as well as compensatory damages for emotional distress and the loss of enjoyment of the ordinary pleasures of life.

29. Ybarra is entitled to punitive damages to punish Starbucks for its Title VII violations.

30. Ybarra is entitled to punitive damages to deter Starbucks and other companies from future violations of Title VII.

31. Ybarra filed a Charge of Discrimination at the United States Equal Employment Opportunity Commission ("EEOC") on January 26, 2018; was sent a Right to Sue letter on September 13, 2018; and is filing this action within 90 days thereof.

**WHEREFORE**, Plaintiff Emilio Ybarra requests that Defendant Starbucks Corporation be found liable, that judgment be entered in his favor, and that he be awarded all remedies to which he is entitled under the law, including but not limited to: backpay with interest, fringe benefits, compensatory damages, including non-economic damages, punitive damages, litigation costs, expert witness fees (if applicable), and reasonable attorney's fees.

**Count II: IHRA Sex and Sexual Orientation Discrimination**

32. Ybarra re-alleges paragraphs one through fifteen (15) as if fully alleged here.

33. The IHRA prohibits sexual harassment in employment.

34. It expressly protects harassment based on sexual orientation.

35. The IHRA provides for strict liability when a supervisor sexually harasses an employee.

36. Ybarra was sexually harassed by a supervisor at Starbucks: he was subjected to unwelcome sexual advances or requests for sexual favors and other conduct of a sexual nature.

37. The conduct substantially interfered with his work performance.

38. The conduct created an intimidating, hostile or offensive working environment.

39. As a result, Starbucks has violated the IHRA.

40. As a result of Starbuck's actions and inactions, Ybarra is entitled to all available remedies under IHRA for suffering financial loss, emotional distress, and the loss of enjoyment of ordinary pleasures of life.

41. The EEOC charge was cross-filed at the Illinois Department of Human Rights ("IDHR"); Ybarra received the IDHR's Notice of Dismissal and Order of Closure on November 15, 2018; and Ybarra is filing this action within 90 days of receipt thereof.

**WHEREFORE**, Plaintiff Emilio Ybarra requests that Defendant Starbucks Corporation be found liable, that judgment be entered in his favor, and that he be awarded all remedies to which he is entitled under the law, including but not limited to: backpay with interest, fringe benefits, actual damages, including non-economic damages, which are not limited under IHRA, and litigation costs, expert witness fees (if applicable), and reasonable attorney's fees.

**Jury Demand**

42. Plaintiff demands trial by jury.

DATED: 12/12/2018

Respectfully submitted by:

/s/Julie Herrera

Law Office of Julie O. Herrera
53 W. Jackson, Suite 1615
Chicago, IL 60604
Tel: 312-697-0022
Fax: 312-697-0812
jherrera@julieherreralaw.com